(54 Misc. Rep. 372)

### FLANAGAN v. LYON et al.

(Supreme Court, Special Term, New York County.  May, 1907.)

CORPORATIONS—ORGANIZATION—CONTRACTS OF PROMOTERS—BREACH—ACTION BY CORPORATION.

A corporation was organized by the owners of the assets of a brewing company, under an agreement to transfer the assets to such corporation in payment of its stock and bonds, to be distributed among the holders of the assets pro rata; a part thereof to be transferred to the corporation, to be sold for the purposes of raising money to carry on the business. An excessive amount of the stock and bonds was issued to several parties in violation of the agreement, and none were transferred to the corporation. *Held,* that the corporation could not maintain an action against those receiving an excess of the stock and bonds; the right of action being in the other parties to the agreement.

Action by De Witt C. Flanagan against Amasa Lyon and others for the return of certain stocks and bonds.  Judgment for defendants.

Woodward, Kisselburgh & Hopkins (William E. Kisselburgh, of counsel), for plaintiff.

Kenneson, Emley & Rubino (Thaddeus D. Kenneson and Henry A. Rubino, of counsel), for defendants other than McLaughlin.

LEVENTRITT, J.  The plaintiff sues as a stockholder of the defendant Zeltner Brewing Company for the surrender and return of certain stock and bonds alleged to have been illegally issued to the individual defendants.  The prayer of the complaint is predicated upon allegations: That in May, 1904, the plaintiff and the defendants Lyon and McLaughlin entered into a so-called "syndicate" agreement, pursuant to which they, through the plaintiff, purchased from a trustee in bankruptcy the assets of the Henry Zeltner Brewing Company, organized the defendant corporation with a capitalization of $700,000 stock and $250,000 bonds, and transferred to it the assets so purchased for $699,000 of the capital stock, together with $100,000 of the bonds of the organized company, although it was agreed between them, at the time of the transfer, that the amount received for the assets exceeded the value thereof.  That thereafter the plaintiff, Lyon, and McLaughlin entered into an oral agreement to the effect that, when the stock and bonds, the consideration for the sale of the assets, were issued to the plaintiff, he would "cause to be transferred to said Lyon $85,000 of said stock, par value, and $45,000 of said bonds, par value, and to said McLaughlin $20,000 of the said stock and $10,000 of the said bonds, each at par, and would retain for himself $50,000 of the said stock, par value, and $25,000 of the said bonds, par value, and cover back into the treasury of said corporation the balance of said stock, and bonds, to be applied to the following purposes and no other: $104,000 of such treasury stock was to be issued to said William H. Zeltner for certain valuable considerations, and $83,000 thereof to the estate of one Henry Zeltner, deceased, in full settlement of the claims of the estate against said involuntary bankrupt, as provided in a certain decree of the United States District Court for the Southern District of New York in said bankruptcy proceedings, and $50,000 thereof

to R.ˉ D. Woodward for legal services. The balance of said stock, it was further provided in said oral agreement, was to be used solely for the benefit of the corporation in aid of the sale of the balance of said total issue of the bonds when authorized, to wit, $172,000 par value; it being further provided in said oral agreement that said balance of said bonds should be sold for the purpose of raising working capital for said corporation, that such sale should be for par, and that there should be issued from the treasury of said corporation, as a bonus to purchaser of said bonds, stock in said corporation at the rate of two to one." That the stock and bonds were issued, "whereupon, in fulfillment of such oral agreement, this plaintiff indorsed the said stock certificate to the said Lyon, Zeltner, McLaughlin, and himself, and deposited same in the office of said corporation on or about the 10th day of August, 1904, in order to enable said corporation to issue stock to proper parties and in quantities provided for in said oral agreement." That thereafter the defendants Lyon and Zeltner, the former as treasurer and the latter as vice president of the corporation, canceled the certificates of stock issued to the plaintiff and transferred by him to the "syndicate," and thereupon issued of that stock to Zeltner $104,000, to Lyon $231,000, and to McLaughlin $31,000. That such cancellation and issue was unauthorized, illegal, and without consideration, and operated to injure the corporation, by reason of the fact "that it will prevent the sale of the balance of said bonds yet remaining in the treasury of said corporation upon terms as advantageous as the terms provided in said oral agreement, and unless the same can be sold for par the said corporation will be unable to obtain sufficient working capital to enable it to enlarge its business." Also, that the plaintiff's stock in the corporation will be depreciated in value unless the stock unlawfully issued be returned to the treasury of the corporation and the sale of the bonds thus made possible.

The oral agreement sought to be established on the trial differs materially from that alleged in the complaint. The plaintiff's testimony is:

"We were each to get dollar for dollar in bonds for the amount of our subscription and an equal amount of preferred stock and equal amount of common stock, and the balance of the stock was to be used for the disposal of the bonds and for Mr. Woodward's compensation and for the Zeltner family claim and Mr. William Zeltner, what he was to get; and, if any balance remained over after that, it was to be divided pro rata to the amount of our subscriptions."

The contention of the individual defendants is that, after issuing $104,000 of the stock to William H. Zeltner and $83,000 to the estate of Henry Zeltner, the balance of the "syndicate" stock and the $100,-000 of bonds was to be distributed among the plaintiff, Lyon, and McLaughlin in proportion to the amounts severally contributed by them to the purchase of the assets of the Henry Zeltner Brewing Company.

I am impressed with the truth of the plaintiff's version of the agreement as disclosed upon the trial, and believe the understanding to have been that, after the transfer of stock to the Zeltners in settlement of their claims and the transfer to the individual members of the "syndicate" of an amount, respectively, in common and in preferred stock

equal to the amount of their several subscriptions, the balance, as far as necessary, was to be used by them to assist in the disposition of the remaining bonds of the corporation.

Nevertheless this action cannot be maintained by the plaintiff as a stockholder, because the company itself could not maintain it. The corporation was neither party nor privy to the oral agreement for the division of the stock. It was not entitled to demand any benefits therefrom. It was not liable in any way thereunder. The agreement was solely between the individual members of the syndicate. They alone were interested in the transaction. Although it was alleged to be the "understanding" that the agreement was to be made in the interests of the corporation, no proof in support of that allegation was offered. None of the stock in dispute was ever transferred to the corporation. It never became the owner or entitled to any part thereof. The issue was to the plaintiff, unconditional and for value; and there is not the slightest indication of an agreement or intention to "cover back" or to return to the treasury any of the stock. The plaintiff's own testimony is that, after the issue of the certificates to him, he indorsed them over to Lyon, McLaughlin, Zeltner, and himself, "so that, if anything happened to me, there would be no difficulty in getting the stock out of my name"; and, although he left the certificates in the company's safe in charge of Lyon, the treasurer, he was careful to observe that he "did not leave them with the treasurer of the corporation as treasurer of the corporation." Up to a certain point the members of the so-called "syndicate" dealt with each other in apparent good faith, and the agreement between them was performed to the satisfaction of all. But they dealt entirely between themselves. The corporation had no interest in the transaction. If the plaintiff's associates practiced fraud or committed a breach of their agreement, a cause of action is vested in the plaintiff individually, and not in the corporation or in the plaintiff as a stockholder thereof.

The fact that the assets of the Henry Zeltner Brewing Company were taken over by the defendant corporation at a price largely in excess of their actual value is immaterial. The plaintiff and his associates were practically the corporation. They, as individuals, transferred the assets to themselves as the corporation. There was, therefore, no one to be injured. The Zeltners did not become stockholders until after the purchase of the assets, when they, with knowledge of the situation, received and accepted stock from the "syndicate" in settlement of their claims against the Henry Zeltner Brewing Company. The case of Seymour v. Spring Forest C. Ass'n, 144 N. Y. 333, 39 N. E. 365, 26 L. R. A. 859, discloses a situation somewhat analogous to the one here presented. There the court, by Finch, J., say:

"While the technical form of this transaction was a sale by the 11 to the corporation, its substance was merely a change in the manner of holding. The sellers were the buyers. They sold as individuals and bought as a corporation, and no one else had any interest in the question of price or terms of sale. If they were the vendors on the one hand, dealing with themselves in a corporate capacity on the other, they were also the sole beneficiaries to be affected, and could not defraud themselves. The abstraction of the corporate entity should never be allowed to bar out and prevent the real and obvious truth. * * * Evidence was given to show that the land conveyed was not worth

the sum secured, but that is a totally immaterial fact. Whatever the price, it wronged no one, and could wrong no one, and accomplished nothing, except to fix a primary limit to the anticipated profits."

In Barr v. N. Y., L. E. & W. R. R. Co., 125 N. Y. 263, 26 N. E. 145, the court, by Gray, J., say:

"But the stockholders and the members of the syndicate were the same persons, and, however wrong the transaction might be if other persons were concerned, here no injury was effected, to any one interested in the corporation; and, however illegal the transaction, there was no person apparently to complain of it. As the stock was issued as a part of the consideration for construction, it cannot be said that it was taken without value given; and the mode of its apportionment or division concerned only those interested in the contract, through which it was received in payment."

The language of the Court of Appeals in Blum v. Whitney, 185 N. Y. 282, 77 N. E. 1159, is pertinent:

"We have here nothing more than the ordinary transaction of parties coming together and agreeing * * * to form a corporation that shall take over from them certain definitely understood properties and cash, for which is to be issued its entire capital stock. It is doubtless true that in many instances there is great overcapitalization, and that the general public is frequently misled by the large amounts of preferred and common stock issued by corporations. The rights of the public are not involved in this litigation."

The plaintiff argues that these views are in conflict with the opinion of the Appellate Division of this department in the case of People v. Lyon, 119 App. Div. 361, 104 N. Y. Supp. 319. That action was instituted by the Attorney· General for the removal of the defendants Lyon and Zeltner as directors of the defendant corporation. The complaint, which contained allegations similar in all substantial respects to those in the pleading which furnishes the basis of this action, was demurred to for insufficiency, and an interlocutory judgment overruling the demurrer was sustained. There, however, the court necessarily construed merely the allegations of the complaint, which pleaded an agreement at variance with that here proven. It is that variance which compels the conclusions I have reached.

There must be judgment for the defendants, dismissing the complaint, but without costs.

Judgment for defendants, dismissing complaint, without costs.